## DAVE WRIGHT v. STATE.

No. A-5710.   Opinion Filed Aug. 5, 1927.
(258 Pac. 1072.)

J. H. Hays, for plaintiff in error.

Geo. F. Short, Atty. Gen., for the State.

EDWARDS, J.   The plaintiff in error, hereinafter called defendant, was convicted in the county court of Love county on a charge of pointing a pistol at another, and his punishment fixed at a fine of $50 and confinement in the county jail for a period of 3 months.

The defendant and all the witnesses were negroes, living near the negro school of Ran, Love county. Defendant conducted a small store nearby. Several young negroes engaged in a difficulty near the store, and a bystander went there and informed defendant, and requested him to stop the difficulty. Defendant asked some parties present to look after the store for a few minutes, then went to the scene of the trouble, and there took a pistol from Ralph Williams. The charge is that he then pointed the pistol at Williams. Manse House, one of the participants in the fight, is the only witness who testified positively that defendant pointed the pistol at Williams. Williams testified:

"* * * A. Well, Manse House and Clem Wright had a dispute over some money. And so Manse House called Clem a God damn liar, and Clem hit Manse, and they started to fight, and Manse's brother grabbed him, and I says, 'Cap, I would turn Manse loose.' I was standing there talking to Manse and Cap, when Dave come down the hill, and he hit me and knocked me down, and taken my gun away from me; so I said, 'Come on, boys, and let's go back to the house.' And so we went.

"Q. Did Dave point the pistol at you? A. When he took my gun, he did.

"Q. Why did he take it? A. I don't know. * * *

"Q. You don't really know at this time—you wouldn't swear positively that he pointed the gun at you? A. I believe he did. * * *

"Q. Do you know why he took your gun? A. No; I don't know. I don't have any idea, unless he thought he might be doing something right.

"Q. Where did you have the gun? A. In my front pocket.

"Q. Did he ask you to throw up your hands? A. No, sir; just took the gun and walked off. * * *"

Defendant testified:

"Q. State to the jury what caused you to go down there where those boys were. A. Mathers Mimms came up to the store and said those boys was having trouble, and asked me to go and see if I could stop them. I went down there, and in about 21 steps I says, 'You all cut this out,' and Ralph says, 'God damn it.' I says, 'Cap, go on to the house,' and Ralph got his gun, and I took his gun and says, 'Ralph, go on to the house.' I never pointed a pistol at him at all.

"Q. You took the pistol; what did you do with it? A. Put it in my pocket.

" Q. Why did you take the pistol? A. I was afraid he would shoot some one.

"Q. What did you go down there for, Dave? A. Well, Mathers Mimms asked me to.

"Q. Did you go down there to make trouble? A. No, sir.

"Q. Did the boys quit fighting? A. When I took the pistol they did. * * *"

The testimony of several other witnesses supports that of defendant. As we read the record, defendant acted more in the capacity of a peacemaker than as one engaged in the difficulty. The evidence does not sustain the judgment.

The case is reversed and remanded, with instructions to dismiss.

DOYLE, P. J., concurs.

DAVENPORT, J., absent, not participating.